SCOVEL v. CITY OF DETROIT.

1. HIGHWAYS AND STREETS — CONTROL — AUTHORITY OF LEGISLATURE.
   In the absence of special constitutional restraint, and subject to the property rights and easements of abutting owners, the legislature has full paramount authority over all public ways and public places.

2. SAME — DETROIT PARK COMMISSIONER — DELEGATION OF POWER — SPEEDWAY.
   The act of the legislature in authorizing the commissioner of parks and boulevards of the city of Detroit to set apart and improve a portion of the boulevard in that city for a speedway (section 33, Act No. 417, Local Acts 1901), is not invalid as an improper delegation of legislative power, nor as in contravention of the uses of a public boulevard.

Appeal from Wayne; Donovan, J. Submitted June 13, 1906. (Docket No. 109.) Decided October 1, 1906.

Bill by Massie W. Scovel and others against the city of Detroit and others to restrain the construction of a speedway in a public street. From a decree dismissing the bill, complainants appeal. Affirmed.

*James H. McDonald* and *Lloyd L. Axford*, for complainant.

*P. J. M. Hally* (*T. E. Tarsney*, of counsel), for defendants.

MOORE, J. The complainants are taxpayers in Detroit who own land abutting on the Western Boulevard between Holden avenue and McGraw avenue. The purpose of the bill is to enjoin the building of a speedway 30 feet wide and about five-eighths of a mile long through the central part of the boulevard which is now given over to grass, trees, shrubs, and flowers, and which is from 2 to 8 feet above the roadway on each side thereof. The common council recommended to the board of estimates the appropriating of $6,000 for this purpose, which appropriation was passed by the board of estimates. The prayer of the bill is that the court will declare:

"1. That this appropriation for said speedway is an appropriation of public money for private purposes and therefore void.

"2. That the location of said speedway upon the public boulevard of the city of Detroit be declared not to be for boulevard purposes within the meaning of the act establishing said boulevard or of the conveyance by which the title to the lands used for said boulevard was conveyed to the city of Detroit.

"3. That the appropriation and the designation of said way as a speedway is so indefinite and uncertain, and leaves so much to the determination of the park commissioner, that it is void as granting the said park commissioner legislative power.

"4. That the gathering together upon the public boulevard of a crowd of people to do and observe this speeding will be a public nuisance.

"5. That the establishment of such race track or speed-

way will be against the provisions of the park and boulevard act.

"6. That a writ of injunction may be passed restraining the building of the speedway."

The court below dismissed the bill of complaint. The case is brought here by appeal.

The important question in the case is whether the building of the proposed speedway is in contravention of the uses of a public boulevard. The origin of the boulevard in question dates back to the passage of an act entitled "An act to provide for the establishment and maintenance of a broad street or boulevard about the limits of the city of Detroit," etc. Act No. 374, Local Acts 1879. This act created a board of boulevard commissioners. Section 10 of the act gives the control of the boulevard to the commissioners, with "power to make all reasonable rules and regulations concerning the use of said boulevard," etc. The board of boulevard commissioners was later succeeded by the commissioners of parks and boulevards, whose power in relation to the control of the boulevard is substantially the same as that possessed by the board of boulevard commissioners. The original act was amended so that section 33 (Local Acts 1901, Act No. 417) reads:

"No persons shall ride or drive in said park or along said boulevard at a rate of speed exceeding eight miles per hour, excepting that horses may be speeded on such parts of said boulevard or Belle Isle park as may be set apart by said commissioner for that purpose, and then only under such regulations as the commissioner may prescribe."

It is very clear the legislature intended by this language to give specific authority to the commissioner to set apart a portion of the boulevard for the speedway. In 2 Dillon on Municipal Corporations (4th Ed.), § 656, it is said:

"Public streets, squares, and commons, unless there be some special restriction, when the same are dedicated or acquired, are for the public use, and the use is none the

less for the public at large, as distinguished from the municipality, because they are situate within the limits of the latter, and because the legislature may have given the supervision, control, and regulation of them to the local authorities.   The legislature of the State represents the public at large, and has, in the absence of special constitutional restraint, and subject (according to the weight of more recent judicial opinion) to the property rights and easements of the abutting owner, full and paramount authority over all public ways and public places."

We think it was competent for the legislature to confer this authority upon the commissioner, if he did not already possess it by the terms of the original act.   See 9 Am. & Eng. Enc. Law (2d Ed.), p. 80; *Leger* v. *Rice*, 8 Phila. (Pa.) 167; *Gleason* v. *City of Cleveland*, 49 Ohio St. 431; *Warren* v. *City of Grand Haven*, 30 Mich. 24; *Grand Rapids, etc., R. Co.* v. *Heisel*, 38 Mich. 62, and cases there cited; *Commissioner of Highways* v. *Cobb*, 104 Mich. 395.

The other points raised by counsel have been considered, but we do not deem it necessary to discuss them.

The decree of the court below is affirmed.

GRANT, BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.